James Boyd, Jr., the plaintiff and appellant herein, was accidentally injured on May 12, 1941, in the course and scope of his employment by the Evan Hall Sugar Cooperative, Inc., while working in its sugar house at McCall, in the Parish of Ascension. The accident occurred to Boyd when a large stack of bags of sugar which he was working on, became dislodged and fell on him, allegedly bruising and crushing his right leg to such an extent as to leave him a cripple, with permanent injuries and unable to continue to carry on the only kind of work he is capable of doing.
At the time of his employment as a laborer, Boyd was earning an average weekly wage of $14.40.
Because of the accident and the injuries and damages complained of, plaintiff filed this suit, praying for damages in tort under the provisions of Article 2315 of the Revised Civil Code of Louisiana, asking for a total award to him of $17,500, divided into items of physical pain and suffering, mental pain and agony, and for being crippled from the date of the accident for the remainder of his life. In the alternative, plaintiff seeks compensation under the Workmen's Compensation Act of Louisiana, Act No. 20 of 1914, as amended, at the rate of $9.36 per week from May 12, 1941, for a period of 400 weeks, less a credit for amounts heretofore paid to him, plus the sum of $17.50 covering medical expenses.
The tort claim for damages was based on the theory that plaintiff was hired by the Evan Hall Sugar Cooperative to work in the sugar house and his implied consent was obtained to do certain work by virtue of a concealment of the true facts and that the failure to disclose the hazard and danger of the work and occupation was illegal and null, and that defendants, therefore, are bound by the provisions of the Codal Article for all damages suffered by Boyd.
An exception of no right or cause of action to this claim was correctly disposed of by the District Court who sustained it in accordance with the decision of this Court in the case of Brooks v. American Mutual Liability Insurance Co. et al., 7 So.2d 658, wherein it was held that where it was alleged that a field hand assigned to work in a sugar house was not informed of the extra hazards connected with such employment due to the dangerous conditions of stacks of sugar bags which were known to the employer, did not allege such fraud as would vitiate the employee's presumed agreement to be governed by the Compensation Act, so as to render the employer liable in tort.
Plaintiff is, therefore, relegated to his claim under the Workmen's Compensation Act.
There seems to be no doubt that Boyd did suffer an injury while in the course of his employment and we are, therefore, concerned with the extent of that injury and the disability, if any, resulting therefrom.
On the trial of the compensation claim on the merits, it was shown that the defendants paid compensation to plaintiff from May 12, 1941 (the date of the accident) up to October 15, 1941, at the rate of $7.80 per week, which was later changed to the admittedly correct rate of $9.36 per week, and the only question then submitted for determination on the merits was whether or not the plaintiff was suffering from disability arising out of his accident subsequent to October 15, 1941, for which he is entitled to be compensated. On that question the District Court rendered judgment against the plaintiff and dismissed his suit, finding and holding that the case presented by plaintiff was based wholly on testimony of lay witnesses, unsupported by any medical testimony and opposed by the unanimous findings of doctors and medical experts to the effect that Boyd had no disability subsequent to October 15, 1941. The *Page 104 
District Court depended on and cited the opinions in Abbott v. Swift Company, La.App., 6 So.2d 683, and Miller v. Anderson-Post Hardwood Lbr. Co., Inc., La.App., 3 So.2d 196.
Plaintiff has appealed from the judgment of the District Court, contending and insisting that the lay testimony shows conclusively that he was suffering from a painful injury to his right leg, with a resulting limp since October 15, 1941, and at the time of the trial. He contends that the medical testimony offered by the defendant should not have been admitted by the Trial Court because it was either not competent to show the conditions of plaintiff on October 15, 1941, or that it is based on hearsay. Counsel for plaintiff contends that the testimony of Dr. Folse, the physician who treated the injuries of plaintiff, is not competent because it does not show the physical condition of plaintiff subsequent to August 25, 1941, at which time Dr. Folse released the plaintiff from further treatment, and he argues that the testimony of the other doctors in the case is hearsay, and not admissible, on the theory that this testimony is based on an examination of an X-ray of plaintiff made by an assistant to Dr. Polmer.
We have carefully examined the testimony and in order to properly consider this case, we summarize it in the order in which it appears on the record, as follows:
The plaintiff, James Boyd, Jr., testified that his injuries consisted of a broken knee and a broken hip, his leg being placed in a plaster cast by Dr. Folse, who treated him from the time of his injury. He testified that his leg remained in this plaster cast for ten weeks, during which time he was confined to bed, and that after the removal of the cast, he remained in bed for an additional two weeks, after which he was given crutches which he used for two weeks, after which he was able to walk around by the use of a stick. He stated that he continuously suffered, still suffers and will always suffer from pain from his injured leg and hip and at the time of the trial, was limping and still had to use his stick. According to his testimony he had always done laboring work, in the field and on the railroad, and that he is unable to do such work now.
A sister of the plaintiff, Albertine Clark, testified that as a result of his injuries, he had been forced to remain in bed for ten weeks and to use crutches for two weeks and that thereafter he suffered from his leg which was shown by the fact that at night he called her and other members of his family to rub his leg with alcohol; that while able to walk with a cane, because of his injuries, he was unable to work.
Rush Collins, another of plaintiff's witnesses, testified that he was a friend of and had known Boyd for ten or twelve years; that he sees him regularly two or three times a week and that he uses a cane or stick to walk with and limps when he so walks.
Anthony Pizzolato, a grocer of the community in which Boyd lives, testified that he had known the plaintiff since October 15, 1941, and that he had observed that he walks with a cane and limps when he walks.
Ernestine Hollins, Gertrude LeBlanc, Herbert Bea and Peter Hernandez, friends and acquaintances of Boyd, all testify that when they see him walking, he is limping and using a stick.
This is the extent of the testimony, all lay and none medical, of the disability of Boyd subsequent to October 15, 1941.
Dr. Henry Folse, a licensed physician of the community, and whose testimony, it was agreed, should be taken as a medical expert, testified that on the date of the accident, May 12, 1941, and at least daily thereafter until May 23, 1941, he examined and treated the plaintiff; that his first examination revealed a simple fracture of the left hip which he treated by immobilization of that hip. No other fracture except this simple fracture of the left hip was discovered or treated. Dr. Folse states that he completed his treatment on August 25, 1941, at which time plaintiff was completely cured from the effects of his injury sustained on May 12, 1941, and that on that date, August 25, 1941, in his opinion there existed no physical impairment to plaintiff of any kind. Dr. Folse testified that he thought "that the patient has definitely developed a true neurosis in association with his recent experience."
Dr. Percy H. LeBlanc was called as a witness by the defendant, but his testimony was not taken because counsel for plaintiff objected on the ground that he had examined Boyd at his, Boyd's request and, therefore, his visit to Boyd was a privileged communication which the doctor is prohibited from disclosing. We, therefore, do not have the benefit of the testimony of this Doctor who, it was agreed, was a qualified *Page 105 
physician of the City of Donaldsonville. He visited and examined plaintiff at plaintiff's request. Plaintiff, however, not only did not call Dr. LeBlanc as his witness but successfully prevented his testifying as a witness for defendant. We believe that the testimony of Dr. LeBlanc would have been helpful to the District Court as well as to us. Plaintiff did not use this witness and objected to defendant questioning him. The significance of this situation cannot be disregarded.
Dr. Nathan H. Polmer, a specialist in physical therapy, testified that he examined X-ray pictures marked "L-1312, James Boyd, Jr. 10-15-41" made of plaintiff by Dr. Polmer's technician under his direction on October 15, 1941, and further testified that from his records, made by his assistant from his, the doctor's dictation, and from an examination and visual facts of the X-ray photographs, he found no fracture or break in the plaintiff's left leg or hip.
The testimony of Dr. Polmer was vigorously objected to by counsel for plaintiff on the ground that the X-rays and the record were made by Dr. Polmer's technician and not by the Doctor himself and that, therefore, the testimony of Dr. Polmer is hearsay. There is no foundation for such an objection. It is clear that the technician used the office and equipment of Dr. Polmer, acted under his direction and made the record from the dictation of Dr. Polmer. We cannot stretch the prohibition against hearsay evidence to the extent urged by plaintiff's counsel. We think the testimony of Dr. Polmer was properly admitted and should be given full consideration.
Dr. Theodore Simon, an orthopedic surgeon, confirmed and corroborated the testimony of Dr. Polmer to the effect that he found no evidence of any fracture from the examination of the X-ray plates taken by the technician of Dr. Polmer on October 15, 1941.
Dr. Simon Geismar testified that he examined the plaintiff in person on or about October 21, 1941, and that from a memorandum which was a typewritten document dictated by him to his secretary and which he, the Doctor signed, this "physical examination revealed a very well developed individual apparently not suffering at all; on inspection, nothing unusual is noted about either lower extremity."
It might be noted that counsel for plaintiff likewise objected to the testimony of Dr. Geismar on the ground that the memorandum he testified from was not written by the Doctor himself but by his secretary This, in spite of the fact that the Doctor both dictated and signed the document. This objection also was properly overruled.
 Conclusion.
A careful consideration of the whole testimony in this case brings us to the conclusion that while the lay testimony of the plaintiff, his relatives and his friends, indicate that Boyd limps and walks with a cane, we cannot find any such error in the conclusions of the Trial Judge who heard and saw the witnesses testify, that is sufficient to justify or to overcome the strong and unanimous findings of the medical experts as set forth in the summary of their testimony above. There are ample and sufficient reasons for the District Court to have found that the plaintiff is not suffering from any disability subsequent to October 15, 1941, arising or growing out of the injury suffered by him on May 12, 1941, that would entitle him to any further compensation, and we can find no reversible error.
We can find no substance to the objection of plaintiff that Dr. Folse did not know plaintiff's condition as of October 15, 1941. Dr. Folse treated the plaintiff from the date of his accident until August 25, 1941, and on that date found him completely recovered therefrom. Unless Dr. Folse is entirely wrong, the condition claimed by plaintiff as of October 15, 1941, would not be related to the accidental injury of May 12, 1941, and it is apparent that Dr. Folse was not in error because the testimony of Drs. Polmer, Geismar and Simon, based on the later examination of Boyd, fully confirm and corroborate his earlier findings.
For the reasons hereinabove given, the judgment of the District Court in favor of defendants and dismissing plaintiff's suit, is affirmed.
LeBLANC, J., recused. *Page 106