HAMITER, Justice.
 

 Invoking the Uniform Declaratory Judgments Act, LSA-R.S. 13:4231 et seq., the Caddo Contracting Company, a Louisiana corporation engaged in the hazardous business of paving, instituted this action for the purpose of having determined its liability under the Louisiana Employers’ Liability ActJ LSA-R.S. 23 :1021 et seq., for-the death of an employee, Ike Johnson, who died as the result of'an accident occurring on November 21, 1950' during the course and within the scope "of his employment.
 

 Claiming compensation, and cited as defendants herein, are (1) Roberta Johnson, who was decedent’s legal and childless wife, and (2) Lola Johnson, a concubine of Ike Johnson and the mother of three minor children by him, whose demand is made only for and on behalf of her children.
 

 The district court, after trial of the merits, fixed the compensation due by plaintiff at the maximum of $30' per week and decreed that the legal wife, Roberta Johnson, was entitled to one-half thereof and that the three illegitimate children were entitled to the other one-half jointly, the payments to. run for a period of 300 weeks commencing as of December 5, 1950.
 

 From the judgment plaintiff appealed to-the Court of Appeal, Second Circuit. Neither Roberta Johnson, the legal wife, nor Lola, the representative of the children, appealed or answered plaintiff’s appeal.
 

 In the Court of Appeal the judgment of the district court was affirmed. See 54 So.. 2d 827. To obtain a review of the decision with respect to the children plaintiff made-application for the writ of certiorari which was granted.
 

 The award in favor of the widow is. not assailed, plaintiff conceding that she was entitled to compensation. In view of' this acquiescence, and since the .widow neither appealed nor answered plaintiff’s appeal, that part of the judgment, cannot be disturbed. Further, as a result thereof, the contest now is solely-between plaintiff
 
 *801
 
 and the representative of the three minor children.
 

 The evidence conclusively discloses, and it is not denied, that for many years the deceased employee, Ike Johnson, maintained two households, one in Shreveport and the other in nearby Bossier City. In the Bossier City home he kept and supported his legal wife, Roberta, to whom he was married in 1941. His mother resided there also, but she was not dependent on him. In the Shreveport establishment he kept’ his concubine, Lola, and their three illegitimate children who were born subsequent to his marriage to Roberta, he being the sole support of all of them. Between the two households decedent divided his time nearly equally, operating so ingeniously as to prevent the members of one from having knowledge of the existence of those of the other.
 

 Plaintiff, which alone (as before shown) makes complaint of the judgment of the district court as affirmed by the Court of Appeal and then only to that part granting $15 per week to the minor children, takes cognizance
 
 \>í
 
 a decision of this court awarding compensation to illegitimate children of a deceased employee who were members of his family, resided with him, and were dependent upon him for support. See Thompson v. Vestal Lumber & Manufacturing Co., 208 La. 83, 22 So.2d 842. But it insists that the illegitimate children here can not recover because of the existence of decedent’s legal wife.
 

 First, plaintiff says that the children were not members of the family of dece-' dent (a prerequisite for an award to them), inasmuch as he could have but one family and it, in this instance, consisted solely of his lawful wife and himself. In the Vestal case, supra, the illegitimate children of the deceased employee were held to be members of his family, within the contemplation of the Employers’ Liability Act, primarily for the reason that they lived with him and were dependent upon his earnings for support at the time of the accident and death. The identical situation is present here with the exception that the decedent also resided with and supported his legal wife in a separate home. The maintenance of the two different households, although unusual and unnatural, does not alter the fact that he had but one family, it including both the legal widow and his dependent illegitimate children.
 

 The second and principal contention of plaintiff is that under the express provisions of the compensation statute the existence of the legal widow, who lived with the employee at the time of his death, prevents any recovery by the dependent illegitimate children. This contention is grounded on Section 1232 of Title 23 of the Louisiana Statutes Annotated — Revised Statutes of 1950 which commences with the statement: “Payment to dependents shall be computed and divided among them on the following basis * * The section then schedules, in six subdivisions,
 
 *803
 
 the payrrients to be allocated to the widow, widower and childrep. And it concludes with the following:
 

 “(7)
 
 If there are neither widow, widower, nor child, then to the father or mother, thirty-two and one-half per centum of wages of the deceased. If there are both father and mother, sixty-five per centum of wages.
 

 “(8) If there are neither widow, widower, nor child, nor dependent parent entitled to compensation, then to one brother or sister, thirty-two and one-half per centum of wages with eleven per centum additional for each brother or sister in excess of one. If other dependents than those enumerated,. thirty-two and one-half per centum of wages for one, and eleven per centum additional for each such dependent in excess of one, subject to a maximum of sixty-five per centum of wages for all, regardless of the number of dependents.”
 

 Plaintiff takes the position that the Legislature in the mentioned schedule has placed the various dependents in classes, and, by virtue of the particular language employed (“If there are neither * * * then * * *”), has ranked them so that the mere existence of members of a superior class will preclude the rights of those of an inferior class. Then, with this as a basis, the argument is advanced that these illegitimate children, classified only as “other dependents” under subdivision (8) of the schedule, are entitled to nothing because of decedent’s legal widow who is in a preferred class.
 

 In determining this litigation we must consider not only the section of the .Employers’ Liability Act on which plañir tiff relies but also other pertinent provisions of the statute dealing with the matter of dependency. All of the statutory provisions, moreover, are to be given a liberal construction and their purpose and intent ascertained. McDonald v. Louisiana, Arkansas & Texas Transportation Co., La.App., 28 So.2d 502; Patin v. T. L. James & Co., Inc., 218 La. 949, 51 So.2d 586.
 

 Other provisions of the statute pertinent here are to be found in LSA-R.S. Title 23, Sections 1251 and 1252. The first of these sections lists those persons who, on the existence of certain circumstances, are conclusively presumed to be wholly and actually dependent upon the deceased employee, they being a wife, a husband, and a child. The second or following section recites:
 

 “In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death;
 
 in such other cases if there are a sufficient number of persons •wholly dependent to take up the maximum compensation, the death benefit shall be divided
 
 * * *
 
 among them,
 
 
 *805
 

 and persons partially dependent, if anyt shall receive no part thereof.”
 
 (Italics ours.)
 

 These provisions, particularly the emphasized portion of LSA-R.S. 23:1252, suggest an intention on the part of the Legislature that the maximum compensation should be paid to the various total dependents (including parents, brothers, sisters, grandparents, and all other members of the family), if sufficient in number to absorb it, in preference to partial dependents. And when such provisions are considered in connection with LSA-R.S. 23 :- 1232,
 
 on
 
 which plaintiff relies, it appears that the latter purposes (1) 'to place the' total dependents in classes, and (2)- to give preference for the scheduled payments to the respective classes in the order named to the extent of the maximum compensation, members of an inferior class- taking only so much thereof as remains after payment to those in the preferred classes. To illustrate, where a deceased employee, who had earned $60 per week at the time of his accident and death, is survived by his widow and wholly dependent mother and father, the widow, by reason of being preferred, receives first 32%% of his wages, or $19.50. The mother and father, who are in the next succeeding class and are scheduled to receive 65% of his wages (not exceeding $30) in the absence of widow and children, take the unabsorbed portion of the maximum compensatiton of $30 per week, or $10.50.
 

 Particularly significant, and further indicating an intention of the Legislature for an allocation among total dependents of compensation to the extent of the maximum (as above outlined), is the use of the word “divided” in the initial sentence of the schedule itself. Under plaintiff’s theory, which is that payment to a preferred beneficiary precludes recovery by dependents in inferior classes, there would be no necessity for making any division whenever the decedent leaves a -widow without children, for the widow would receive the stipulated 32%% of wages and nothing would remain to be divided. The word “divided” in that situation would be meaningless.
 

 Important to notice also is the last sentence of the above quoted schedule of payments. The sentence follows the various provisions relating to the widow, widower, children, parents, brothers and sisters. Although contained in subdivision (8) of the schedule, it is not specifically restricted thereto. Rather, it appears to be applicable, to the entire schedule; and, assuming this to be correct, -it seems to contemplate the payment of the maximum compensation in the event there are sufficient eligible dependents in the several classes to absorb it.
 

 True, as plaintiff points out, subdivisions (7) and (8) of the schedule commence with the language “If there are neither widow, widower, nor child”. But such language, obviously, is not used in the sense of making the awards to subordinates contingent
 
 *807
 
 on the non-existence of all listed preferred dependents. The awards stipulated for the inferior classes range as high as 65% of the wages, and the mentioned language undoubtedly is employed with the view of permitting that entire maximum to be paid where or when or in the event there is no superior 'beneficiary to take a part of it. An inferior class,, in other words, may recover the full allotment if or when to do 'so would not infringe on benefits stipulated for preferred claimants.
 

 The history of the development of the legislation, we think, supports our conclusion that under the schedule in question the existence of a member of a preferred class does not foreclose the rights of those in the next succeeding class so long as the maximum compensation remains unabsorbed. The original Act, No. 20 of 1914, clearly contained no exclusion provision respecting the various total dependents; in fact, it did not prefer one class to another. That statute provided for a division of the death benefits among the total dependents (when more than one), persons partially dependent receiving no part thereof. And the schedule therein commenced, just as the schedule in the present statute, with the statement that the payments to the several dependents should be divided among them on the basis set forth therein. It then stipulated the percentage of wages to be received by the dependents in the respective classes, no language indicating the preferring of one class to another being used. The schedule concluded: “If the total benefits according to this clause exceed 50'per cent, they shall be abated proportionately.”
 

 Act No. 243 of 1916 established classes by preference; and it omitted the provisions of the original statute which prescribed a “dividing” of the payments among the dependents. Possibly, 'because of such omission, a literal construction of that statute might furnish the conclusion that it carried the exclusion feature which plaintiff here contends for.
 

 However, Act No. 43 of 1922 made it clear that a preferred class should not exclude an inferior class, unless the former absorbed the maximum benefits, when it recited : “* * * but if only one parent be actually dependent on the deceased employee to any extent for support at the time of the injury and death and there be brothers and sisters and other members of the family of the deceased employee not hereinabove specifically provided for, then if any such brother or sister or other member of the family not otherwise specifically provided for was actually dependent on the deceased employee for support to any extent at the time of the injury and death, ten per centum additional for each such brother or sister or other dependent member of the family not otherwise specifically provided for, subject to a maximum of sixty per cent of wages for all.”
 

 By Act No. 85 of 1926 the Legislature set up the statute substantially as it present
 
 *809
 
 ly exists. • While continuing the éstablishment of classes by preference, it returned to and adopted those provisions of the initial legislation to the effect that the benefits should be “divided” among the dependents. 'This, as before shown, indicates that the •entire maximum should be paid whenever there are sufficient total dependents in the several classes entitled to it. If such were not the intention of the Legislature it, at that time, could have so stated easily, simply, and clearly.
 

 ' It would seem illogical to conclude that the exclusion theory advanced by plaintiff was intended. Under that theory the dependent mother and father of a deceased ■employee would receive 65% of his wages if he left neither widow nor child; but they would get nothing if a child, to whom compensation of only 32i/^% of his wages would be due,, survived him. We know of no good reason for achieving such a result and cannot conceive that it was ever contemplated.
 

 Counsel for plaintiff concede that the •question under consideration is res novo in the jurisprudence of this court. But they say that certain language supporting their position is contained in Balthazer v. Swift & Co., 167 La. 249, 119 So. 37 and Williams v. Jahncke Service, Inc., La.App., 38 So.2d 400 and 217 La. 1078, 48 So.2d 93. The language relied on, if favorable to plaintiff, is clearly obiter dicta. In each of those cases the question was whether the existence of a
 
 non-dependent
 
 widow of a •deceased employee precluded the rights of a dependent in an inferior class; and to it the court gave a negative answer. In this connection it is interesting to note that in McDonald v. Louisiana, Arkansas & Texas Transportation Co., La.App., cited supra, the court held, as we do here, that compensation accruing to a dependent member of a preferred class does not preclude the right to benefits on the part of dependents of a subordinate class.
 

 In the instant case compensation, under our interpretation of the appropriate provisions of the Employers’ Liability Act, was payable to the dependents of decedent as of the time of his death as follows: first, to the widow — 32j/¿>% of his wages, but not exceeding $30 per week; and secondly, to the three minor children jointly • — the difference between the full compensation to which the widow was so entitled and the maximum allowable under the statute (in the absence of the widow they would have been entitled to 54i^%).
 

 But the exact amount due these minors (their claim is the only one before us, the widow having neither appealed nor filed answer to plaintiff’s appeal) can not be determined presently for the reason that the record fails to disclose the wages of decedent, as prescribed by the statute, on which the computation should be made. On this point the evidence, given by plaintiff’s bookkeeper, is merely to the effect that for the year 1950 the decedent (who was killed in November, 1950) averaged $80.29 per week. Presumably, this figure was ar
 
 *811
 
 rived at by dividing his total earnings during that year by the number of weeks which he worked; and it is possible that in the early part of the period his wages were more than at the time of his death, or vice versa. This method, if such was used, is improper. The term “wages” is defined in the statute as “the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury.” LSA-R.S. 23:1021. Hence, the weekly compensation award must be 'based on the employee’s earnings at the time of his injury, and this is determined by talcing his then daily rate of pay and multiplying it by the number of .days customarily worked per week. Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, Calhoon v. Meridian Lumber Co., Inc., 180 La. 343, 156 So. 412, Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855, and Troquille v. Estate of Lacaze, 222 La. 611, 63 So.2d 139.
 

 It follows that this case must and will be remanded for the restricted purpose of receiving evidence as to decedent’s wages when injured. On receipt of the evidence the district court shall determine the weekly earnings as set out above, shall compute the benefits to which the widow was entitled as of the time of decedent’s injury (32%% of the wages), and shall enter judgment decreeing compensation in favor of Lola Johnson, as representative of decedent’s three minor children, for the difference between that to which the widow was so entitled and the maximum allowable under the statute, the payments to run for a period of 300 weeks commencing as of December 5, 1950.
 

 For the reasons, assigned the judgments of the district court and of the Court of-Appeal are affirmed insofar as they award compensation to Roberta Johnson of $15 per week for a period of 300 weeks. With respect to the claim of Lola Johnson, as; representative of the minor children, the judgments are reversed and set aside and the case is remanded to the district court for further proceedings according to law and consistent with the views above expressed. Plaintiff shall pay the costs of all courts.