AYRES, Judge.
This is an action under the Workmen’s Compensation Statute, LSA-R.S. 23:1021 et seq. The plaintiff is the widow of Theo Flanagan, who was accidentally killed July 23, 1953, while discharging his duties in the course of his employment and within the scope of his employer’s business at Bay St. Louis, Mississippi, under a contract of hiring entered into in the State of Louisiana. This action is instituted by plaintiff for and on her own behalf as surviving widow and for the use and benefit of her three minor children, ■ issue of her marriage with the deceased. The defendants are deceased’s employer and the employer’s workmen’s compensation insurer.
The defense tendered is two-fold: (1) That plaintiff and the surviving children were not living with the deceased at the time of his accident and death, and (2) they were not at said time actually dependent upon the deceased or his earnings for support. After trial, the court concluded the defenses were well founded and rejected plaintiff’s demands. From the judgment thus rendered, plaintiff has appealed.
The position of the plaintiff is that (1) she and the children for whom she appears were, within the intent and purpose of the statute, living with the deceased at the time of his accident and death and that they are consequently conclusively presumed to be wholly and actually dependent upon the deceased for support, LSA-R.S. 23 :- 1251; or (2) that, as a fact, at his death they were actually and wholly dependent upon his earnings for support. LSA-R.S. ,23:1231. It appears appropriate, at this time, to note also that under LSA-R.S. 23 :- 1255, “No compensation shall be payable * * * to a widow unless she was living with her deceased husband at the time of the injury or death, or was then actually dependent upon him for support.”
A résumé of the evidence is essential to an understanding and resolution of the issues thus presented. A detailed discussion, however, would serve no beneficial purpose. A statement of the important facts as we find them from the record is deemed sufficient. To the facts thus found we shall endeavor to apply the law applicable thereto.
Plaintiff and deceased were married August 15, 1943, and of their marriage three children were born, namely, Vera Lee, September 20, 1944; Tommy, August 9, 1946, and Barbara Ann, December 26, 1947. They maintained their home and residence at either Bossier City or Shreveport or in those vicinities, where they lived together until September 14, 1948, when plaintiff and the children accompanied plaintiff’s mother to Los Angeles, California, where they have lived ever since in a house with plaintiff’s brother. The husband continued to live in Louisiana, and the two never saw each other again. For a brief vacation period one of the children visited the father. Plaintiff, nevertheless, attended the funeral and later again visited in Shreveport on one occasion.
*291 Notwithstanding these facts, plaintiff contends it was neither her nor her husband’s intention to live permanently separated from one another- She testified it was his intention to follow her to California after he had paid some debts and bought a car. No definite plans were ever formulated for resumption of the family relationship, although the husband and wife had lived separate and apart for almost five years. However, true to the adage that absence makes the heart grow fonder — for the other person — long prior to the expiration of this five years, the spark or flame of the husband’s love and affection for his wife had grown dim, if not altogether extinguished, when, in November, 1949, the object of his affection was one Buella Murray, who lived with him as his wife and fulfilled the attributes as such by doing his cooking and washing and bearing a child, born a day prior to his death, in thankfulness for all of which deceased designated Buella Murray as beneficiary in a group life insurance policy, from which she received, after his death, the sum of $2,000.
The above facts appear to be uncontro-verted, but other facts are' in dispute. These pertain to plaintiff’s claim of her contact with her husband through correspondence and as to support claimed to have been extended her and the children in the meantime. Plaintiff testified that she and her husband constantly corresponded; that she wrote him 28 or 29 letters per year and that he wrote her 17 letters per year; that during this time she received from him in cash $150 in 1949, $180 in 1950, $45 in 1951, and $80 in 1952. Thus, she claims that in the 12 months preceding her husband’s death he contributed to her and the children’s support a total of $135. Buella Murray denies both the correspondence and the support claimed by plaintiff, particularly as to the support in that she claims she handled his pay checks in many instances and doubts he forwarded plaintiff either cash or clothes. Plaintiff did not produce any letters that she had received from her husband. However, Flanagan’s mother, to some extent, corroborated plaintiff’s contention as to these matters and testified that the funds with which plaintiff and children moved to California were obtained by plaintiff from her son’s employer and that her son repaid the loan, and that although the sending of cash was discontinued, the husband continued the support by the furnishing of clothing which he purchased and which she forwarded to the children. Whether the exact amounts claimed were furnished by the deceased for the support of his wife and children is not a matter of too great importance for it could only be concluded that the husband did contribute something to their actual support. Whatever support was furnished, however, constituted only a small percentage of the requirements for their living expenses. However, soon after their arrival plaintiff received from the California State Aid the sum of $139 per month until February, 1953, when the amount was increased to $142 per month.
It would appear from the evidence that at the time of plaintiff’s leaving for California there was no intention of a permanent separation. The fact that the husband provided the money for the trip tends to support this view. Deceased’s mother testified that plaintiff and children were to return by Thanksgiving, which passed without their return. The husband then expressed some thought they would surely return by Christmas. Whether plaintiff intended to return to Louisiana and rejoin her husband here at the time she left is a different matter. She says that he was to follow her to California, but, after his failure to do so, the record is barren of any showing of any plans or effort on her part to re-establish marital relations with her husband. The separation was voluntary on her part as was her sojourn in California. Their separation was neither enforced nor continued because of any economic reasons or by any intolerable treatment administered her by her husband. Neither action was taken nor effort made to enforce her husband to a greater contribution towards their *292 support. It could only be concluded that whatever idea the parties originally had as to resumption of marital relationship had been forgotten and abandoned. Therefore, the conclusion is inescapable that at the time of the husband’s death he and plaintiff were not living together as man and wife so as to bring her and children within the conclusive presumption of actual dependency upon him or his earnings for support.
Therefore, if plaintiff is to prevail in this action, she must of necessity rely upon the provisions of LSA-R.S. 23:1231, which, so far as pertinent, reads:
“If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident”,
provided, of course, that the proof supports a proposition of actual dependency of the wife and children upon the earnings of the deceased at the time of his death.
From the facts related hereinabove, it could only be concluded that neither plaintiff nor the children were actually wholly dependent upon the deceased or his earnings. The principal support came from the welfare funds of the State of California. Taking at face value the record as to the contributions made during the 12 months preceding the husband’s death, such contributions approximated only a small fractional part of the family requirements.
The evidence, therefore, in our opinion, supports the proposition that plaintiff and the children were partially actually dependent upon the earnings of the deceased for their support. That plaintiff is entitled to recover compensation for herself and for said minors as dependents actually partially dependent upon the earnings of the deceased employee logically follows, but within the limits provided in § 1202 of the statute as was in effect at the time of the employee’s death; specifically, each of the dependents is entitled to the minimum weekly compensation of $3. This is in accordance with the rule for determining the compensation as provided in the statute and the formula based thereon contained in Malone’s Louisiana Workmen’s Compensation, page'41S, § 307. This formula has been recognized and followed in many decisions of the appellate courts of this State. Where a mother, in accordance with the aforesaid rule and formula, would be entitled to SS cents per week, it was held she was entitled to the minimum provided in the statute of $3 per week for a period of 300 weeks. Thomas v. St. Paul Mercury Indemnity Co., La.App., 88 So.2d 737. In the absence of proof of any definite or regular amount of contribution by deceased employee to dependent, the amount payable is the minimum rate of weekly compensation of $3, as fixed by the statute. Dudley v. Martin, La.App., 4 So.2d 102; Powell v. Paramount-Richards Theatres, Inc., La.App., 22 So.2d 859; Lunkin v. Triangle Farms, Inc., La.App., 24 So.2d 213.
In Patin v. T. L. James & Co., Inc., 218 La. 949, 51 So.2d 586, an award of $3 per week was made to the employee’s mother because of the lack of evidence to establish the extent of the employee’s contributions to her.
In the instant case, the four dependents, the wife and three minor children, were partially actually dependent upon the employee’s earnings for support. Each was so dependent. Where the proof does not justify a greater award, the minimum weekly compensation is due each of the four dependents so long as the maximum compensation remains unabsorbed. The maximum compensation was shown to be $30 per week. The aggregate of the compensa *293 tion payable to the four dependents is only $12 per week. Any other conclusion would appear unrealistic with the facts and without consideration to the needs of the dependents whose support is one of the objects of the Compensation Statute.
In Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177, it was held that the entire maximum compensation for death should be paid whenever there are several total dependents entitled to it, but, nevertheless, the existence of a member of a preferred class, such as a widow, does not foreclose those in the next succeeding class of such dependents, who were illegitimate minor children of the deceased, so long as the maximum compensation remains unabsorbed. To the same effect is Patin v. T. L. James & Co., Inc., supra.
The jurisprudence is well established in this State that the Workmen’s Compensation Act is to be liberally construed, with a view of carrying out its purpose. Undoubtedly, the Legislature intended to allow compensation to those who were dependent upon an employee for support. Archibald v. Employers’ Liability Assur. Corp., Ltd., 202 La. 89, 11 So.2d 492; Hamilton v. Consolidated Underwriters, La.App., 21 So.2d 432.
It was held by this court in McDonald v. Louisiana, Arkansas & Texas Transp. Co., La.App., 28 So.2d 502, 503, that it was unquestionably the intention of the statute to provide for the payment of the maximum compensation, that is, 65 percent of the wages, or the then maximum of $20 per week, whichever was the less, in the event of the existence of either total or partial dependents, or both, and that so long as there exists any remainder of the maximum which is unabsorbed by payments made to dependents of one class, it must be held available for payment to and distribution among the members of the next succeeding class of dependents. No reasons have been advanced and we know of no sound basis that would justify a difference in the rule merely because all the dependents were only partially actually dependent, or of the same class.
In Patin v. T. L. James & Co., Inc., supra [218 La. 949, 51 So.2d 591], it was held that a minor, as a totally dependent member of the deceased employee’s family, was entitled to compensation of 32]4 percent of decedent’s weekly wages for 300 weeks, although a partially dependent mother, as in-tervenor, was also held entitled to compensation. In this connection, the court stated:
“And since he was wholly dependent, as shown, the said Raymond Patin should recover under the schedule a weekly sum of thirty-two and one-half per cent of decedent’s wages ($49.57) at the time of his death for a period not exceeding 300 weeks, which weekly sum, when computed, is $16.11.
“These weekly payments will in no manner affect the compensation of $3.-00 per week for the dependent mother inasmuch as the total of both does not exceed the maximum of $20 per week which the statute, in effect at the time of the employee’s death, authorized.”
Under the topic of Priority of Claimants for Death Benefits under the Workmen’s Compensation Statute, Louisiana Law Review, Vol. XII, page 104-108, in a discussion of the Patin, McDonald and Hamilton cases, the observation was made that it had been generally accepted and held by the courts that the presence of one or more members of a prior class precluded any consideration of compensation for members of a lower class, and that as a prerequisite to recovery a member of a subordinate class had to allege and prove the absence of any member of a prior class. This, as the author observed, resulted in inequities and the courts looked for a reasonable means to avoid such an impasse. Accordingly, it was stated that the court in the McDonald case reasoned that the subordinate classes were to be allowed compensation until the maximum permitted was exhausted, and that in the Hamilton case, the *294 dependent brothers and sister, meeting the test of legal dependents of their deceased brother, were not to be relegated to a deferred class merely because their mother was also dependent upon their brother’s earnings for support. In conclusion, it was stated:
“So long as the maximum, is not encroached upon, there is no valid objection to allowing compensation to all those who would have received financial benefit from the decedent’s continued existence.” (Emphasis supplied.)
This is the conclusion we reach, notwithstanding the language employed in § 1253 of the Statute, which, in part, says:
“If there is no one wholly dependent and more than one person partially dependent, so much of the death benefit as each is entitled to shall be divided among them according to the relative extent of their dependency.”
This provision is in apparent conflict with other provisions of the statute fixing the amount of compensation and designating the dependents to whom it is payable. To give the provision literal effect, we would have to disregard the clear intent and purpose for which the Compensation Statute was enacted, which would lead to the absurd consequences of a division of the minimum $3 weekly compensation among the surviving widow and three dependent children, so as to award each 75 cents. For all practical purposes, this would be equivalent to a denial of compensation to dependents who clearly come within the provisions of the statute, which provisions would thereby be nullified.
The function of the courts is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so rigidly as to give them absurd or ridiculous meanings. State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213. And, where a statute is ambiguous and susceptible of different constructions, the courts will give that construction which best comports with the principles of reason, justice and convenience, since it is presumed that the Legislature intended such exceptions to its language as would avoid injustice, oppression or absurd consequences. State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601; Berteau v. Police Jury of Parish of Ascension, 214 La. 1003, 39 So.2d 594; Webb v. Parish Council of Parish of East Baton Rouge, 217 La. 926, 47 So.2d 718; Dore v. Tugwell, 228 La. 807, 84 So.2d 199.
A court is not compelled to apply a clause in a statute literally, or at all, if such application will result in applying the statute as a whole in a way completely contradictory of its paramount purpose. Arkansas Oak Flooring Co. v. Louisiana & Arkansas Ry. Co., 5 Cir., 166 F.2d 98.
A construction of a statute which would bring about absurd consequences should be avoided unless such intent of the Legislature is so manifest that no other construction is possible, and the court must presume that absurdities were not contemplated and should adopt the construction which may be reasonably presumed to have been intended by the Legislature. State ex rel. Barre v. Fulton, La.App., 63 So.2d 21.
Applying these principles to the Compensation Act as a whole, the conclusion is inescapable, particularly in giving the Act the liberal construction which we are enjoined to do, that it was the legislative intent to allow compensation to all who would have received financial support from the decedent’s continued existence. Therefore, the ambiguity arising by virtue of the aforesaid provision should be, and must be, disregarded as inconsistent with the other provisions of the statute to the contrary. This is in accord with the ruling of this court in McDonald v. Louisiana, Arkansas & Texas Transp. Co., supra, [28 So.2d 503] wherein it was stated:
*295 “We willingly concede that the provisions of the Workman’s Compensation Act, as amended, which hear upon this proposition, are to some considerable degree ambiguous and confusing. Learned counsel for defendants has ably presented those portions of the Act which appear to support his argument. However, we here reiterate the proposition that the intent and purpose of the Act must he determined from a consideration of the entire text and not by isolated or selected provisions thereof’, (Emphasis supplied),
and is in accord with the ruling of the Supreme Court in Caddo Contracting Co. v. Johnson, supra, [222 La. 796, 64 So.2d 179] wherein we find this expression.
“In determining this litigation we must consider not only the section of the Employers’ Liability Act on which plaintiff relies hut also other pertinent provisions of the statute dealing with the matter of dependency. All of the statutory provisions, moreover, are to be given a liberal construction and their purpose and intent ascertained. McDonald v. Louisiana, Arkansas & Texas Transportation Co., La.App., 28 So.2d 502; Patin v. T. L. James & Co., Inc., 218 La. 949, 51 So.2d 586.”
For these reasons, the judgment appealed is annulled, avoided, reversed and set aside, and it is now ordered, adjudged and decreed there be judgment herein in favor of the plaintiff, Martile Kimble Flanagan, individually and for the use and benefit of the three minor children, Vera Lee Flanagan, Tommy Flanagan, and Barbara Ann Flanagan, against A L & W Moore Trucking Contractors, a commercial partnership composed of A. Lee Moore and Woodrow Moore, and against the said A. Lee Moore and Woodrow Moore, individually, and the Great American Indemnity Company in solido, for the full sum and weekly compensation of $12 per week, that is, $3 each per week for each of the four dependents, for a period of 300 weeks, beginning August 1, 1953, together with five percent per annum interest on each of said installments from maturity until paid, and for all costs.
It is further ordered, adjudged and decreed that plaintiff’s attorney’s fee be and it is hereby fixed in the sum of 20 percent of the amount which may be collected or recovered under this judgment, provided that such fee shall not exceed $1,000.
It is further ordered, adjudged and decreed that the defendants pay all costs of this suit.
Reversed and rendered.