BARHAM, Justice
(dissenting).
When the employee Stokes died from an injury suffered in the course and scope of his employment, he had living in the home with him and dependent upon him for their support and livelihood four legitimate minor children, from whose mother he was separated but not divorced, and one unacknowledged illegitimate minor born of his open adulterous relationship with Willie Mae Weber. A second illegitimate child of this latter relationship was born posthumously. There is no question that the illegitimate minors were not only unacknowledged but unacknowledgeable under our law. However, it must be conceded that the deceased and Willie Mae Weber lived together in a relationship which, though adulterous, was stable, open, and familial. The legitimate and the illegitimate occupied a similar status of dependency upon their deceased father.
The four legitimate minor children have recovered in tort an amount in excess of the workmen’s compensation benefits which would be paid to all dependents, and the employer would be entitled to recover (if it had paid compensation) from the damages collected from the tort feasor an amount equal to the compensation benefits. The legitimate children have therefore exhausted the workmen’s compensation benefits.
We are here confronted with the question of whether a dependent unacknowledged illegitimate child and a posthumous illegitimate child have, under our statute, claims for workmen’s compensation against the employer which are to be equated with the claims of the legitimate children, or whether the illegitimates’ claims are deferred so that they may recover only if there is a residue after the preferred claims enumerated in the statute are satisfied.
In Perkins v. Brownell-Drews Lumber Co., 147 La. 337, 84 So. 894 (1920), our court in a half-page opinion brushed aside the claim of unacknowledged illegitimates to any workmen’s compensation benefits. In Barranco v. Davis, 175 La. 35, 142 So. 844 (1932), this court again refused to allow dependent unacknowledged illegitimate children any benefits under the Workmen’s Compensation Act, and in Beard v. Rickert Rice Mills, 185 La. 55, 168 So. 492 (1936), once more this court under strict construction denied recovery to an unacknowledged illegitimate grandchild dependent. In Ar *437 chibald v. Employers’ Liability Assur. Corporation, 202 La. 89, 11 So.2d 492 (1942), however, this court recognized the socioeconomic purpose of the statute under consideration, the obligation to liberally construe it, and the proposition that the Legislature intended to allow compensation to those who were dependent upon the employee for support. The court specifically distinguished Beard v. Rickert Rice Mills, supra, but its method of differentiation as well as its conclusion forecast the cases to come which were to break the bárrier against the right of the unacknowledged illegitimate to recover workmen’s compensation benefits. Then in Thompson v. Vestal Lumber & Mfg. Co., 208 La. 83, 22 So.2d 842 (1945) on rehearing and without dissent this court held that although unacknowledged illegitimate children were not “children” as defined by the Workmen’s Compensation Act, they were “legal dependents” who were members of the family of the employee under the act and entitled to present a claim for compensation.
In Patín v. T. L. James & Co., 218 La. 949, 51 So.2d 586 (1951), this court held that the existence of a preferred partial dependent did not exclude the claim of a wholly dependent member of a deferred group. As noted by Professor Wex S. Malone, 12 La.L.Rev. 150, 154, that case could very well have been the forewarning that there would no longer be a distinction of preferred and deferred classifications. In Williams v. Jahncke Service, 55 So.2d 668 (La.App.Orl.1951), the Court of Appeal held that although there was a surviving widow, a totally dependent illegitimate child of the deceased employee was entitled to 32J4 per cent of the weekly wages of the deceased. In Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177 (1953), the Supreme Court allowed three minor unacknowledged illegitimate children of the deceased employee to recover the difference between the compensation allowed to the childless widow and the maximum compensation.
A review of this jurisprudence shows a definite trend. Under our original construction an unacknowledged illegitimate child was without any right under workmen’s compensation. Then we took the important step of allowing the unacknowledged illegitimate child compensation in a deferred classification if there were no members of the preferred class. Now the established practice of this court is to look toward a determination of the nature and extent of dependency rather than the nature of the legal relationship, so that the illegitimate child is allowed to recover fully in workmen’s compensation, with only the limitation that the illegitimate cannot impinge upon the claims of members of a preferred class under R.S. 23:1232. The jurisprudence has undoubtedly concluded that the basic legislative intendment in this regard is to be found under R.S. 23:1231 — de *439 pendency — rather than under the relationship classifications of R.S. 23:1232 which have more validity in the law of inheritance and real rights, and even in delictual law, than in purely social legislation.
From the line of cases and the obvious trend indicated by them, it would appear that this court, by according predominance to R.S. 23:1231, continuing our liberal construction of the Workmen’s Compensation Act, and applying our own Constitution, Article 1, Sections 2 and 6, could have eventually reached the result now sought by the plaintiffs without resorting to the federal constitutional pronouncement in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. That case held that failure to include dependent familial illegitimate children within the classification of “child” under Civil Code Article 2315, our wrongful death action, was invidious discrimination.
Compensation law is social law designed to make an employee’s inability to produce income because of an employment-associated injury an element of the cost of production of goods and services, to be paid by the employer and passed on to the public in the purchase price of the goods and services. The Legislature sought for and found in the compensation law the source of financial protection for those who were dependent upon the employee and his income which was terminated or adversely affected because of injury in the course of employment. This law is societal structuring of welfare contribution from the public through a producer-consumer relationship rather than through the usual State-taxpayer relationship. As noted in a Comment, 28 La.L.Rev. 110, legislative bodies in creating and courts in applying socio-economic legislation which provides benefits to children “contingent upon the father’s membership in a given class or the father having otherwise earned the benefit” have generally disregarded the distinction between legitimates and illegitimates. The State owes every child, legitimate or illegitimate, the same duty, and when the State adopts legislation to relieve itself of the support of children, a classification which prefers legitimate over illegitimate appears to be unwarranted.
While we held in the remand of Levy v. State Through Charity Hospital of Louisiana, 253 La. 73, 216 So.2d 818, that Article 2315 was sui generis, our opinion indicates that this court did not believe that article to partake of the nature of social legislation above described. Our delictual article, as we noted there, has always been construed strictly. It is not entitled to the liberal interpretation given to social legislation such as workmen’s compensation. Although this court, at least in majority if not in unanimity, disagreed with the United States Supreme Court’s finding of invidious discrimination in the inclusion of only legitimates within our definition of *441 "child” under Article 2315, we were required to accept that court’s ruling, and we followed its edict.
While I still strongly adhere to the principle underlying our opinion on remand -in that case, which was that the United States Supreme Court decision did not and could not affect our Civil Code concepts of marital relationships, parent and child, and inheritance, I find it would be a legal incongruity to define “child” under Civil Code Article 2315 to include illegitimates and at the same time hold that “child” under R.S. 23:1021 does not include unacknowledged illegitimate children.
If distinction between legitimate and illegitimate children is invidious discrimination under the special rights conferred by Civil Code Article 2315 for wrongful death, which is not purely social legislation and which we have repeatedly stated must be construed strictly, undoubtedly it is invidious discrimination to differentiate between the legitimate and the unacknowledged illegitimate child under the Workmen’s Compensation Act, which is purely social legislation. So to hold is not to extend Levy. It is rather to make what I believe to be the only logical and reasonable legal conclusion within the rule of Levy. It is a conclusion that we may have preferred the Legislature to furnish Under Levy there is no alternative. We are required to exercise the judicial function and make this conclusion without awaiting legislative approval.
In answer to the contention that Levy is not to be applied retroactively, consideration must be given to the great difference between the effect of retroactive holdings in civil and in criminal law. In criminal law retroactivity gives rise to post-conviction remedies, whereas in civil cases final judgments are not disturbed. In civil matters decisions of the court are, with their very pronouncements, the applicable law for future determinations though those determinations are concerned with past occurrences. In Thomas v. Matthews Lumber Co., 253 La. 1, 215 So.2d 832, Mr. Justice McCaleb and I concurred, expressing the view that Levy was controlling and thereby giving it retroactive application. Additionally, many courts throughout the country have applied Levy retroactively without even a consideration that the rule may be only prospective in effect. The Fifth Circuit Court of Appeals in Hebert v. Petroleum Pipe Inspectors, Inc., 396 F.2d 237, (decided even before Levy became a final judgment), by per curiam which simply cited and relied upon the Levy case reversed a Louisiana federal district court holding that illegitimate children were not “children” under the Jones Act.
Illegitimate children can no longer be considered simply members of a dependent class relegated to only a deferred exercise of their workmen’s compensation claims. *443 Whether we would have eventually-reached the determination required of us here, legislatively or otherwise, from within the borders of this state, we are now forced to make this abrupt conclusion by reason of the United States Supreme Court pronouncement in Levy v. Louisiana. The principle laid down in that case is the law of Louisiana, entitled to all the deference and consideration which this court — regardless of personal individual views of its wisdom — must accord every other law of this state. In fact, the United States Supreme Court has made this a constitutional fundamental, and we are required, where it is appropriate as here, to scrutinize other laws in light of this essential rule. This court has no alternative but to depart from the preferential treatment heretofore given under our workmen’s compensation law to legitimate children over illegitimate children (including the posthumous) who though not legally acknowledged are in fact acknowledged, are held out to be the children of the deceased employee, are members of that employee’s family, and are dependent upon his income for subsistence.
I respectfully dissent.
TATE, J., concurs.
Rehearing denied.
SANDERS, BARHAM and TATE, JJ., dissent from denial of rehearing.