Dear Mr. Harris:
You have requested the opinion of the Attorney General concerning the Board of Regents compliance with LSA-R.S. 17:3384
and 17:3129.5, your request has been forwarded to me for consideration and response.
LSA-R.S. 17:3384 established a special fund in the State Treasury, the Louisiana Endowment Fund for Eminent Scholars ("Eminent Scholars Fund"), which is to consist of monies appropriated annually by the Legislature. Funds which are appropriated to the Eminent Scholars Fund are to be divided into challenge grants which shall be administered by the Board of Regents ("Board"). The Board allocated these funds to each University on a matching basis.
According to LSA-R.S. 17:3384B, no more than three of these grants shall be awarded to any one university in any given fiscal year. It further provides that only when an endowment is established and operational is solicitation for a further challenge grant permissible. According to your opinion request in 1991, the Board adopted a new policy awarding endowed chairs on a competitive basis, thus, allowing a University to receive more than three endowed chairs in one year and to receive state matching funds for two endowed chairs at the same time.
As indicated in a letter from the Board of Regents, the Legislature has failed to appropriate monies to the Eminent Scholars Fund. The Board of Regents, therefore, has chosen to allocate funds, appropriated for higher educational purposes under La. Const. (1974), Article 7, Section 10.1("8(g) funds") to the Eminent Scholars Fund. It is the Board's position that it may administer the 8(g) funds as it wishes and that the Board is not bound to follow the requirements of LSA-R.S. 17:3384 in the administration of the Eminent Scholars Fund.
Further, and in support of its argument, the Board cites LSA-R.S. 49:308.3, enacted in 1988, which provides for the abolishment of all special funds in the State Treasury. This law, however, while abrogating special funds within the state treasury does not completely supersede those provisions of existing legislation, which are not in conflict with LSA-R.S.49:308.3. Thus, those substantive provisions under LSA-R.S.17:3384 and 3129.5 not in conflict with LSA-R.S. 49:308.3 remain in effect.
A similar issue has arisen in regard to the administration of LSA-R.S. 17:3129.5's Faculty Incentive Program Fund ("Incentive Fund"). The Incentive Fund is also established in the State Treasury, consisting of monies appropriated annually by the Legislature. This statute also provides that monies may be appropriated from the Louisiana Quality Support Fund or 8(g) funds, provided for in Article 7, Section 10.1 La. Const. (1974). Again, the Board feels that because it is administering 8(g) funds in the Incentive Fund, it is not bound to follow the requirements of LSA-R.S. 17:3129.5.
LSA-R.S. 17:3801 and Article 7, Section 10.1 of the La. Const. (1974) create the Louisiana Quality Education Support Funds. Amounts in this fund are available for appropriation by the legislature and are to be allocated by the Board of Regents for any or all of the following higher educational purposes to enhance economic development:
 (a) The carefully defined research efforts of public and private universities in Louisiana.
(b) The endowment of chairs for eminent scholars.
 (c) The enhancement of the quality of academic, research or agricultural departments or units within a university. These funds shall not be used for athletic purposes or programs.
(d) The recruitment of superior graduate students.
This procedure for appropriating 8(g) funds is an exception to the otherwise generally applicable rule that the governor submit a budget to the Legislature. (See Atty. Gen. Op. 86-737 and 86-757). The Board is given the authority to adopt a proposed program which must then be approved by the Legislature. 8(g) funds are then appropriated by the Legislature to the Board. The Board then allocates those funds to the programs previously approved by the Legislature.
The power to adopt a program with certain enumerated purposes and to allocate appropriated funds to such programs does not include plenary power to adopt rules and regulations concerning the administration of such program, including its sub-programs, where the Legislature has specifically set forth the terms applicable to the administration of such a program.
The Board argues that the reference in both LSA-R.S.17:3129.5 and 3384 to "monies appropriated annually by the legislature" refers only to monies appropriated to these programs from the general fund. This argument requires a construction of LSA-R.S. 17:3129.5 and 3384 which would reject the clear expression of the Legislature's will as to administration of these programs. Further the Board's interpretation produces an absurd result in that these programs may then be administered in two different manners, depending on the source of funding. We cannot adopt such an interpretation.
In construing legislative acts, the Louisiana Courts have stated that:
 All legislative acts are presumed to have been enacted for some definite purpose, and the courts in construing them must endeavor to give an interpretation that will give them effectiveness and purpose, rather than one which makes them meaningless and useless. Peyrefitte v. Harvey, 312 So.2d 159, writ refused 314 So.2d 736.
Further, courts should give reasonable interpretation to statutes and constructions which bring about absurd consequences should be avoided. Louisiana Ins. Guaranty Ass'n v. Guglielmo,276 So.2d 720, writ denied 279 So.2d 690; Flanagan v. A. L. W. Moore Trucking Contractors, 100 So.2d 289.
We are bound by these rules of statutory construction to give effect to the legislative intent as expressed in LSA-R.S.17:3129.5 and 3384. In addition, we are bound to give these provisions an interpretation which is reasonable and does not bring about absurd consequences. It is inconsistent with the statutes to think that the Legislature intended these programs to be administered in a manner contrary to that expressed in those statutes simply because that source of the funding is constitutionally set apart from the general fund of the State Treasury.
In fact, the purpose behind the adoption of Article 7, Section 10.1 of the La. Const. (1974) in 1986 was to reaffirm the Legislature's commitment to dedicate all but one hundred million dollars of monies received from the 8(g) settlement with the federal government to educational enhancement previously expressed in LSA-R.S. 17:3801 (effective July 1, 1985). (See Senate Concurrent Resolution No. 8 of the 1986 Regular Session) Thus, Article 7, Section 10.1 seeks to ensure that those programs proposed by the Board and approved by the Legislature, as having the purpose to enhance economic development through improved higher educational programs, are adequately funded. The fact that these funds go to programs already established and provided for by legislation does not change the nature of the programs. It also does not give the Board the power to abrogate the express will of the Legislature.
Therefore, it is the opinion of this office that the Louisiana University Faculty Incentive Program and the Louisiana Endowment Fund for Eminent Scholars must be administered in accordance with the terms of LSA-R.S. 17:3129.5 and 3384, regardless of whether they are funded with monies appropriated from the general fund of the State Treasury or 8(g) funds under Article 7, Section 10.1 of the La. Const. (1974).
I hope this opinion sufficiently addresses your concerns. If you require any further information please feel to contact this office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: BETH A. CONRAD Assistant Attorney General
RPI/BAC:pab 0304p