While working for the defendant company in its packing plant near Lake Charles, the plaintiff was injured on December 20, 1940, when he fell on the bloody and slippery floor of the plant as he was trimming cow heads with a butcher knife. He carried another instrument in his work apron for use in sharpening his knife. This instrument was some eleven inches in length and had a sharp end. As plaintiff fell, in some way he sat down or fell on the sharp edge of this instrument, causing it to penetrate his body several inches in the region of the rectum. He was taken to the hospital and operated on by the company's doctors. He stayed in the hospital about seventeen days and was treated at home until February 24, 1941, at which time he was discharged by the company doctors as able to return to work. He returned and worked for a few days and then quit, claiming that he could not do the work; that he suffered pain in the region of the injury when attempting to work; that he occasionally passed blood and could not control the movements of his bowels.
He brought this suit to recover compensation for total permanent disability, and alleged that he was receiving wages of more than twenty dollars per week, but did not allege any specific amount of wages; that he worked from 48 to 56 hours per week at 40 cents per hour with time and a half for overtime, and his average daily wages were from $3.50 to $4.00; that the defendant paid him compensation for approximately nine weeks at only $10.40 per week, whereas his compensation should be in excess of $14.00 per week.
The defendant admits that plaintiff sustained a compensable injury and that it paid him compensation at the rate of $10.40 per week, based on a weekly wage of $16.00; defendant alleges that plaintiff was working on the basis of a forty hour week at 40 cents per hour. Defendant admitted that it had paid plaintiff no further compensation, and averred that he had fully recovered and was able to return to work when he was discharged by the company's physicians.
The trial court found that plaintiff suffered no further disability after he was discharged by the company's doctors, but found that he was entitled to compensation for $1.59 per week more than he was paid between December 20, 1940, and February 24, 1941, and gave judgment accordingly. Both the plaintiff and the defendant have appealed from the judgment.
There are two questions presented in the case: First, was plaintiff either totally or partially disabled after defendant ceased paying him compensation; and, second, on what weekly wage should his compensation *Page 684 
be based? These two questions will be discussed in the order named.
Plaintiff testified that he went back to work after he was operated on and discharged by the doctors, but that he could not hold out as he suffered much pain; that he tried to chop wood at home but could not do it; that he has to take mineral oil to make his bowels move regularly, and at times he passes blood in his stools. Two or three of his fellow employees testified in his behalf, but about all they say is that he complained of pain when lifting after he came back to work. His wife and brother testified that he complained of pain when he tried to lift a tub of water and chop wood around the house; also, that he passed blood in his stools at times.
Plaintiff called Dr. Lambert and Dr. Bordelon. The former, on objection by defense counsel, was not permitted to testify as an expert for the reason that he had not recorded his license to practice medicine in the parish. This doctor had not examined the plaintiff and, under the ruling of the court, his testimony was of little probative value. Dr. Bordelon examined plaintiff some ten days after he was discharged by the defendant's doctors. This doctor could find nothing in plaintiff's condition to cause any disability, nor could he find anything in his condition to cause pain in working or exercising. He found no relaxation or contraction of the muscles which control the movement of the bowels.
Doctors Watkins and Barham who operated on and treated plaintiff testified that he had fully recovered from any disability when he was discharged by them. They admit that the injury was a rather serious one, but state that the operation was a complete success and that plaintiff had an uneventful recovery. They say that he has no constriction or relaxation in the muscles controlling the movement of the bowels, and there is no reason why his bowel movements should not be as normal now as they were before the accident. They can see nothing in his condition to cause pain or to cause bloody stools. Dr. Walter Moss also examined plaintiff at the request of Dr. Watkins, and he testified that the wounds caused by the injury and those resulting from the operation had healed in a normal manner, and he could find nothing to cause disability.
In view of the unanimous findings and opinions of these four doctors, one of them called by the plaintiff himself, we think the trial judge was fully justified in his conclusion that plaintiff suffered no further disability from the injury after he was discharged and his compensation payments were discontinued. Had there been a serious disagreement among the doctors as to the extent of the disability, there would be reason to consider the lay testimony in arriving at plaintiff's present ability to do his usual work. To hold that plaintiff is disabled, we would have to disregard the testimony of these four doctors and accept the statement of plaintiff as to his condition with very little corroboration from the other lay testimony. In any event, we can find no manifest error on the part of the trial judge on this point.
On the other point, as to the weekly wage on which plaintiff's compensation should be based, the supervisor of defendant's plant operations testified that the contract of hiring made by the company with plaintiff was based on a minimum wage of 40 cents per hour and a forty hour week, but if he worked over ten hours any one day or over forty eight hours per week, he would get overtime on the basis of time and a half for such overtime. The time sheet introduced in evidence by the defendant shows that plaintiff was paid on the basis of forty cents per hour up to 48 hours per week, and he was paid on the basis of 60 cents per hour for the time he worked over 48 hours per week.
Therefore, it is obvious that plaintiff was not hired and paid on the basis of a maximum forty hour week, but he was paid on the basis of a minimum wage of 40 cents per hour not to exceed 48 hours per week, and 60 cents per hour for all time over 48 hours per week. That was the contract of hiring at the time of the accident. The situation here is the reverse of that in Barr v. United Gas Public Service Co. et al, 183 La. 873, 165 So. 129, and other similar cases cited by the defendant, where the employee was restricted to a maximum number of hours per week.
In arriving at the daily rate of pay, the trial judge took the total amount which plaintiff had been paid for both regular and overtime work as shown on the time sheet and divided the amount by the total number of days he had worked in order to earn that amount, and reached the figure of $3.69 per day, computed on the basis of a five day week. We do not know just how he arrived at the five day week, but as the plaintiff does not seem to question the five day week *Page 685 
as a basis for arriving at the weekly wage, we do not think it necessary to discuss this feature of the question further. Using this figure as the daily rate of pay, the trial judge found the weekly wage to be $18.45, 65% of which is $11.99, or $1.59 per week more than was paid plaintiff.
The wages of an employee for the purpose of determining the amount of compensation to be paid is defined by subsection 3 of Section 8 of Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 361, as the daily rate of pay at which the service rendered by the employee is recompensed under the contract of hiring at the time of the injury. Ordinarily, the weekly wage is determined by using the normal week of six days (unless there is a special contract for a greater or less number of days that can be worked in a week) and multiplying the daily wage by the number of days worked in the week. As there was no specific number of hours that plaintiff was to work in a day nor any special number of days that he was to work in a week, we cannot say that the method used by the trial judge in arriving at the daily and weekly wage was improper or inequitable. See Gay v. Stone Webster Engineering Corporation et al., La.App., 191 So. 745 and Ricks v. Crowell 
Spencer Lumber Co., Inc., La.App., 189 So. 466, where we had a rather similar question under consideration and discussed the principles to be applied in arriving at the weekly wage.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of defendant in both courts.