SAVOY, Judge.
Plaintiff sued the insurer of his employer for workmen’s compensation benefits arising out of an accident which occurred while •in the course and scope of his employment on February 11, 1957. Defendant filed an answer admitting coverage but alleging that it had paid plaintiff all the compensation benefits due.
After a trial on the merits, the lower court, without assigning written reasons, rejected the demands of plaintiff and dismissed his suit. Plaintiff has appealed to this Court from the adverse judgment.
The evidence reveals that on February 11, 1957, plaintiff was working for the Evangeline Parish, Louisiana, Police Jury. That while so working with a shovel, he fell and slipped, causing a bruise to his chest. Plaintiff was examined by numerous doctors.
Shortly after the accident he was brought to Savoy Memorial Hospital at Mamou, Louisiana. Dr. Frank Savoy treated the patient. He was hospitalized for four days and was seen by Dr. Savoy on February 20 and February 27,1957. On the examination of February 27, 1957, Dr. Savoy discharged him as able to resume his work without disability within one week. Upon this recommendation, defendant insurance company paid plaintiff compensation through February 25, 1957 in accordance with LSA-R.S. 23:1224, which provides as follows:
“No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for six weeks or longer after date of the accident, compensation for the first week shall be paid after the first six weeks have elapsed.”
After plaintiff’s discharge by Dr. Savoy, he consulted Dr. C. L. Attaway, physician and surgeon at Ville Platte, Louisiana. Plaintiff was hospitalized by the doctor. Dr. Attaway did not testify at the trial but according to his report in the record, he discharged plaintiff as “cured” on April 15, 1957.
Thereafter, plaintiff was referred to Dr. George B. Briel, orthopedist of Lake Charles, Louisiana, who examined claimant *152 on September 18, 1957; July 23, 1958; and February 24, 1959. On the first examination Dr. Briel referred the plaintiff to Dr. Lesley M. Warshaw for x-rays of the chest and left ribs. The x-rays were negative. After a physical examination of the patient, Dr. Briel could not find anything wrong with plaintiff. He did find an enlargement present on the costal cartilage of probably the seventh rib. The doctor apparently did not place any significance to this condition. On the second examination, Dr. Briel found the hard firm noduli mass (small knot) still present on the cartilage of the seventh rib. There was no tenderness over the mass. X-rays were again taken of the chest and left ribs and the findings were of a negative nature. On physical examination, Dr. Briel could not find anything in the chest or ribs to account for plaintiff’s complaints of pain. Because of the loss of weight and other complaints, Dr. Briel was of the opinion that the patient was suffering from some generalized disease and recommended a medical and neurological examination to rule out these conditions. On the last examination Dr. Briel made a physical examination of claimant. He sent him to Dr. Louis A. Hebert, pathologist, for a blood count, sedimentation rate, and C.A. test. These were all negative. Dr. War-shaw made additional x-rays of his chest and ribs and found no abnormalities. Dr. Briel found that the mass on the seventh rib had not changed in size. Dr. Briel could not account for the numerous complaints of plaintiff.
As a result of Dr. Briel’s recommendations on his second examination plaintiff was sent to Drs. Duane ' Forman and Breaux for evaluation.
Dr. Forman is a neurosurgeon practicing in Baton Rouge, Louisiana. He examined plaintiff on November 15, 1957. Upon examination of the patient the doctor found a rounded, bony, hard prominence about the size of a walnut upon palpation in the region of the costochondral junction of the eighth or ninth rib on the left. It was non-tender.
Dr. Forman did not think the mass described above was responsible for any of the patient’s symptoms.
Dr. Forman referred plaintiff to Dr. Edgar P. Breaux, general surgeon practicing at Lafayette, Louisiana. Dr. Breaux examined the plaintiff on December 16, and 17, 1957. Dr. Breaux gave the following opinion resulting from his examinations:
“Careful examinations were made both clinically and radiographically for possible internal injuries as a result of this blow. We were not able to find any disease or injury to the internal organs as best as could be determined by x-ray. We therefore cannot explain the cause of his upper abdominal pain and occasional gastrointestinal distress. I would conclude, however, that there is no major internal injury or derangement from our studies on this patient.”
On May 5, 1959, plaintiff went to Dr. H. L. Prevost who then was with the Savoy Clinic at Mamou, Louisiana. Dr. Prevost is presently practicing in Alexandria, Louisiana. On direct examination at the trial of the instant case, he stated his practice was limited to general surgery and chest surgery. He found plaintiff to be chronically ill. He felt that the patient had a “chon-droma” in the region of the seventh and eighth ribs. A chondroma is a group of tumors which occur on the bone and they are frequently close to the cartilages. He also found plaintiff had two or possibly three small epigastric herniae through the linea alba of the upper abdomen. He was of the opinion that the trauma caused by the accident in the instant case either initiated or aggravated the tumor.
Dr. Prevost stated that the linea alba is the thick fibrous tissue that is in the middle of the abdomen where all the coverings of the muscles come together. He found the herniae to be between the navel and the end of the breast bone. Dr. Prevost was of the opinion that the accident suffered by plaintiff could not cause the herniae but could aggravate them.
*153 Counsel for plaintiff argues orally and in his brief that (1) plaintiff in a compensation suit need only show by a preponderance of the evidence that his condition is causally related to his accident and initial injury and need not prove this to a certainty; (2) that the testimony of the specialist, Dr. Prevost, should be given more weight than that of the other experts who testified in the instant case.
The “chondroma” found by Dr. Prevost had also been found by Drs. Attaway and Briel, and they testified they did not place any significance to their findings on this subject. Dr. Briel examined plaintiff on three occasions and he did not find any change in the tumor. It would appear to this Court that Dr. Briel was in a better position to evaluate the “chondroma” since he saw plaintiff much sooner than Dr. Pre-vost; and .saw him on three occasions, whereas Dr. Prevost saw him only once. The evidence reveals that the epigastric herniae are not caused by trauma, and it is not possible to say when they developed in the instant case. Dr. Breaux, who both sides admit is a highly qualified physician, made a thorough examination of plaintiff for two days, and he could not find the herniae. He examined plaintiff seventeen months before Dr. Prevost did, and it is very possible that this condition happened after Dr. Breaux’s examination and many months after the accident of February 11, 1957.
While it is true that a plaintiff in a compensation suit is not required to prove the exact cause of his disability, nevertheless, he must show by a preponderance of the evidence a causal relation between the accident and his disability. Malone, Louisiana Workmen’s Compensation Law and Practice, Sec. 252, page 300, and the cases cited therein.
When Dr. Briel examined plaintiff on February 24, 1959, he had numerous complaints, namely, pain in the chest wall, in the left arm above the elbow, in the forearm below the elbow, in his neck, low back, radiation of pain in the left leg to the left knee, along the lateral side of the left leg, to the medial side of the left foot, numbness in the leg, and swelling in the left knee.
From all the symptoms exhibited by plaintiff, it may well be that he was suffering from a chronic illness as testified to by Dr. Prevost. However, we do not feel that the illness complained of by plaintiff is connected with the accident in the instant case, and agree with the trial judge that plaintiff has not carried the burden of proof sufficiently to recover in the instant case. The preponderance of the medical testimony is against plaintiff.
After the instant case was argued and submitted to this Court for adjudication, counsel for defendant filed a motion to correct an error in a joint stipulation made in the trial court by him and counsel for plaintiff.
Counsel for defendant in this motion contends that through error he stipulated with counsel for plaintiff that plaintiff had been paid compensation through February 26, 1957, whereas same had been paid through March 4, 1957.
 This Court is bound by the record received by us on appeal. Dr. Frank Savoy saw plaintiff on February 11, 1957, and discharged him on February 27, 1957, and stated he could resume his regular work without disability within one week from his discharge. According to the evidence in the instant case, plaintiff is entitled to compensation from February 18, 1957, through March 6, 1957, inclusive. Since plaintiff’s disability did not continue for six weeks, he would not be entitled to compensation for the first week. See LSA-R. S. 23:1224.
The record also reveals that the defendant insurance company determined that plaintiff was entitled to compensation at the rate of $16.25 per week. They based this on the fact that plaintiff was earning wages at the rate of $5.00 per day and that *154 he was working five days per week. They then took 65'% of $25.00 to arrive at the weekly compensation payments of $16.25.
The above formula used in fixing plaintiffs compensation was in error. The correct formula to use in the instant case is a six-day week rather than a five-day week. Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399; Collins v. Southern Pulpwood Insurance Company, (La.Ct.App., 3 Cir., 1962), 138 So.2d 638. Using the formula in the Carrington and Collins cases, supra, we find that plaintiff is entitled to be paid compensation at the rate of $19.50 per week.
The appellant raised no issue in this Court as to the rate of compensation or as to the fact that the compensation payments were discontinued a few days before March 6, 1957. Considering all of the facts and exercising the discretion vested in us by LSA-C.C.P. Article 2164, we are of the opinion that the costs incurred in this suit should be borne by plaintiff.
For the reasons assigned the judgment of the lower court is amended and judgment is hereby rendered in favor of plaintiff, Clabert Fuselier, and against Travelers Insurance Company and the Parish of Evangeline, Louisiana, in solido, granting plaintiff compensation against said defendants from February 18, 1957, through March 6, 1957, inclusive, at the rate of $19.50 per week together with interest at the rate of 5% per annum on each unpaid installment from its due date until paid, subject to a credit for compensation payments made by defendants to plaintiff. Plaintiff to pay all costs of Court.
Amended and affirmed.