CULPEPPER, Judge.
This is a suit for death benefits (plus penalties and attorney’s fees) to partial dependents under the provisions of LSA-R.S. 23:1231 et seq. of our workmen’s compensation statute. Plaintiffs are respectively the parents and the brothers and sisters of Joseph Venable, a 16 year old minor, who was killed on September 26, 1960 in a non-collision truck accident, while assisting in the delivery of dairy feed, in the course of his employment. Plaintiffs allege that at the time of his death, Joseph was employed by Linus Joseph Thibodeaux, driver of the truck, who in turn was employed by Ovey Dugas, owner of the truck, who in turn was employed by George B. Matthews & Sons, Inc., the dairy feed distributors. Named as defendants were the three said employers and Liberty Mutual Insurance Company as workmen’s compensation insurer for George B. Matthews & Sons, Inc. Certain third party demands in tort were filed as to the defendants and their liability insurers but they were dismissed on motions for summary judgment and, no appeal having been taken therefrom, we are not concerned with the tort aspects of the case on appeal. As to the workmen’s compensation benefits, penalties and attorney’s fees, the defenses urged by Matthews and Liberty Mutual are primarily: (1) That the plaintiffs were not legal dependents of the deceased; (2) In the alternative, and in the event any dependency is found, that the maximum compensation rate is $19.50 a week, this being based on a daily wage of $5; (3) In the further alternative, that only the parents are partial dependents and the statutory minimum of $10 should be awarded to them jointly, not separately; (4) That no penalties and attorney’s fees are allowable because there are serious factual and legal issues as to dependency and no arbitrary refusal to pay funeral expense because the father did not pay or assume such obligation. Additionally, Matthews and Liberty Mutual, as principals, filed a third party demand against Thibodeaux and Dugas, *642 as independent contractors, for indemnity, under the provisions of LSA-R.S. 23:1061, as to any compensation which Matthews or Liberty Mutual might be ordered to pay in these proceedings.
Following the trial of the case, Dugas and Thibodeaux filed an exception of no right or cause of action as to plaintiff’s demands, on the grounds that they were conducting their business as a partnership at the time of the accident and that, therefore, they could not stand in judgment because the partnership was not cited as a party defendant. The trial judge sustained this exception and dismissed plaintiff’s suit and said third party demand against Dugas and Thibodeaux.
The trial court rendered judgment in favor of the parents for the sum of $10 per week each and and in favor of Eddie Venable, as administrator of the estates of his minor children (except Early Venable who had reached the age of 18 years and was not dependent), as brothers and sisters of the decedent, for the sum of $15 per week, all payments being for a total of 400 weeks. Judgment was rendered in favor of all petitioners, except Early Venable, against Liberty Mutual in the sum of $1500 as attorney’s fees, plus 12% penalties on all weekly benefits. Decedent’s father was awarded $600 as funeral expenses. Said judgment likewise dismissed with prejudice plaintiff’s suit against Dugas and Thibo-deaux as well as the third party demand of Matthews and Liberty Mutual against Thibodeaux and Dugas for indemnity. From this judgment the defendants, Matthews and Liberty Mutual, have appealed.
The first issue is whether plaintiffs were legal dependents of the deceased employee. Plaintiffs do not claim to have been wholly dependent, but only partially actually dependent, upon Joseph’s earnings for support at the time of his death. See LSA-R.S. 23 :1231. Being the parents and brothers and sisters of the decedent, plaintiffs are not listed amongst those designated as being conclusively presumed to be dependents (LSA-R.S. 23:1251) and therefore have the burden of proving partial, actual dependency. LSA-R.S. 23:1252— 23:1254. The jurisprudence is now well established that such claimants must prove that at the time of death the deceased employee was in fact actually contributing from his earnings to their support. The mere existence of a need for support, or a moral or legal obligation to support, is not sufficient to show dependency. LSA-R.S. 23:1231; Haynes v. Loffland Bros. Co., 215 La. 280, 40 So.2d 243; Farley v. Ryan Stevedoring Co., 228 La. 1048, 117 So.2d 587.
The evidence shows that at the time of his death Joseph Venable was living with his parents and brothers and sisters on a 35 acre farm which Mr. Venable leased under an agreement whereby he received two-thirds of the crops produced. For several years Mr. Venable had been obtaining crop loans for operating and living expenses. In 1960, the year during which Joseph was killed, the crop loan was $1330, out of which monthly payments of $65 were advanced to Mr. Venable for living expenses of his family during the months, January through July. This background information shows that the family lived in very modest circumstances and maintained a relatively low standard of living. Joseph, and his older brother, Early, worked on the farm and in addition held occasional outside jobs. The record shows that a week before his death, Joseph had gone to work for Dugas and Thi-bodeaux, helping to unload railroad boxcars of dairy feed and deliver same in the truck of Mr. Dugas, on Tuesdays and Wednesdays of each week at a fixed wage of $5 per day. The week previous to his death, Joseph had worked two days and received $10 in cash, of which amount both Mr. and Mrs. Venable testified that Joseph gave to Mrs. Venable the sum of $7.50 to purchase groceries and other merchandise for the entire family. Although defendants attempted to rebut this testimony by evidence including testimony of *643 Chester Cormier, a close friend of Joseph, that Joseph had used this said $10 to buy clothes for Chester’s wedding, in which Joseph was to serve, and testimony of Mr. Thibodeaux that on the Wednesday when Joseph was paid he went with Joseph to a store, where the latter bought a pair of shoes for which he paid $8 in cash, the lower court held, and we think correctly, that plaintiffs have proved by a preponderance of the evidence this actual contribution by Joseph of $7.50 to the living expenses of the family.
Defendants’ next argument is that even though we find Joseph’s parents were partial dependents, it does not necessarily follow that his brothers and sisters were also partial dependents, because there is no evidence produced to show that Joseph ever contributed directly to his brothers and sisters any portion of his earnings. We do not find it necessary to answer this argument, in view of our holding, as will be seen hereinafter, that the maximum compensation rate is $19.50 per week, which amount is entirely consumed by the benefits due the parents, whose claims have priority over those of the brothers and sisters. LSA-R.S. 23:1232.
Having found the parents to be partial dependents, the next issue is the amount due them. In order to make such a determination, it is necessary to establish first the wages being received by Joseph at the time of his death. Under the recent holdings in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399 and Hoffman v. City of New Orleans, 240 La. 943, 125 So.2d 774, defendants admit that although Joseph worked only 2 days a week, the 6-day week must be employed in calculating his weekly wage. However, there is a serious controversy as to the daily wage. Defendants contend that Joseph’s daily rate of pay was $5 and that accordingly his weekly wages, for the purpose of computing compensation, amounted to $30. Plaintiffs contend and the trial court held, that Joseph was a part-time employee being paid $5 for one-half day’s work and that his daily rate of pay was therefore $10 and his weekly wage was $60.
The facts show that Matthews shipped a railroad boxcar of dairy feed to Carenero, Louisiana on Tuesday of each week. Thi-bodeaux, with the approval of Dugas, employed Joseph to assist in unloading and delivering the feed. The work was generally performed on Tuesday and Wednesday mornings. Joseph was paid $5 each day, regardless of the number of hours worked. Mrs. Venable testified that her son usually left for work between 5 and 5:30 o’clock a. m. and returned at about noon. Mr. Venable stated that Joseph would leave the house, sometimes before daybreak and sometimes after, and that he would return by 12 or 1 o’clock. Early Venable, Joseph’s older brother, who had previously held the same job, stated that the work was from about 7 o’clock a. m. to about noon. Both Thibodeaux and Dugas testified that Joseph was hired by the day; that he worked about 5 hours each day; that he was paid $5 for each day that he worked, and would have received the same amount whether he worked more or less than 5 hours.
 Both plaintiffs and defendants, in their briefs filed in this court, state that as yet no case has been decided by an appellate court of this state, involving the particular facts of this case. The jurisprudence is now settled, that where the contract provides the hourly wage, but fails to specify the working period, an eight hour day will be assumed (Farley v. Ryan Stevedoring Co., 238 La. 1048, 117 So.2d 587); that where the contract provides for an hourly rate of pay and the employee usually worked more than eight hours a day, a full working day is the number of hours usually worked (Troquille v. Lacaze’s Estate, 222 La. 611, 63 So.2d 139); and similarly, that in piece work cases the daily rate of pay is the amount usually earned in a full working day (Collins v. Southern Pulpwood Insurance Company, La.App., 138 So.2d 638) ; but there is no reported case dealing with *644 the situation where the rate of pay was daily (not hourly or by piece work) and the employee usually worked less than eight hours per day.[1]
LSA-R.S. 23:1021(11) defines wages as “ * * * the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury.” Insofar as the weekly wage is concerned, the jurisprudence is now established that regardless of the number of hours or days provided for under the contract of hiring in force at the time of the injury, compensation must be determined by reference to the full working capacity of the victim, that is, a six-day work week.[2] In Carrington v. Consolidated Underwriters, supra, the court held as follows:
“LSA-R.S. 23:1021(11) has been a source of repeated confusion. In the case of Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, we stated that one of the purposes of the Workmen’s Compensation Statute was to insure the employee against the loss or diminution of earning capacity. We held that compensation should be based upon the number of days the workman could have secured employment had he not been injured. The test employed was ability to work. In Calhoon v. Meridian Lumber Co., 180 La. 343, 156 So. 412, we said that economic conditions, which compelled an employee to work half time, would not prevent his recovery of workmen’s compensation on the basis of a six day week.
“In Jarrell v. Travelers Ins. Co., 218 La. 531, 50 So.2d 22, we attempted to straighten out apparent difficulties and clarify our former decisions. We held that an injury had the effect of depriving a workman of his ability to work at full time employment in the future, and that he should be compensated on a six day work week. The ability to work test was again employed in Troquille v. Lacaze’s Estate, 222 La. 611, 63 So.2d 139.
“The use of the word ‘customarily’ in Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177, was not intended to mean that an employee’s weekly wages would be computed upon the number of days he actually or customarily worked for the particular employer, by whom he was employed at the time of the injury. We were referring to the fact that the average able-bodied employee customarily worked six days a week.
“(7) After determining an employee’s daily wage, the six day week is to be employed in calculating his weekly wage. If he is injured, he is deprived of this ability to work six days per week, and remuneration is awarded him for this deprivation. This test must be applied regardless of the number of days he works for the particular employer, by whom he is employed at the time of his injury.”
In the more recent case of Hoffman v. City of New Orleans, 240 La. 943, 125 So. 2d 774 the court again referred to the *645 theory of Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434 and stated:
“In this connection we said: ‘ * * * The workman’s compensation statute is not a statute allowing the workman damages for injuries sustained in the course of his employment even through the negligence or fault of his employer. It is essentially insurance against the loss or diminution of earning capacity, * * *.’ And the theory of such decision, including the six day per week method of computing compensation, has been adhered to consistently by this court. Calhoon v. Meridian Lumber Company, Inc., 180 La. 343, 156 So. 412; Jarrell v. Travelers Insurance Company, 218 La. 531, 50 So.2d 22 (where the employee worked under a contract of hiring for one day a week) ; Troquille v. Lacaze’s Estate, et al., 222 La. 611, 63 So.2d 139; Caddo Contracting Company v. Johnson et al., 222 La. 796, 64 So.2d 177; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399; and Farley v. Ryan Stevedoring Company, Inc., 238 La. 1048, 117 So.2d 587.”
In both the Carrington and the Hoffman cases our Supreme Court was concerned with the weekly wage, rather than the method of determining the daily wage, but it is our opinion that the theory expressed therein clearly applies to the method for determining the daily wage as well. In essence, the test is the amount of the victim’s earning capacity at the rate of pay in effect on the actual day of the accident. Paraphrasing a quotation from Carrington v. Consolidated Underwriters, supra, 89 So.2d at page 403: “* * * an injured workman is entitled to compensation at the rate of pay in effect on the actual day of the injury, based not upon the number.of days per week (hours per day) he was employed but upon the number of days (hours) he could possibly have secured employment had he not been injured * *
Under this test, let us examine the facts of the instant case. The deceased was a 16 year old minor who had completed the seventh grade of school and had no definite plans for continuing his education. During the year previous to his death, he held three different jobs. He worked for “Central Excavation” for about five months earning $1.10 an hour as a “roustabout” in part-time employment. (Tr. 210-211) Next he worked for Simpson’s Potato Kiln for an undisclosed wage. At one time, he had also worked for Matthews, at this same job, for a wage of $5 a day. He left this employment and was replaced by his brother, Early Venable, who in turn quit and was replaced by Joseph, a week before the accident. Although, while working for Matthews, Joseph usually finished by noon, the evidence is clear that he worked by the day, not the hour, and that if there had been any delay because the boxcar didn’t arrive on time, or the truck broke down, he would have had to work beyond noon. The evidence shows that at such times as Joseph was not engaged in these employments, he helped his father on the farm, when there was work in the fields to be done, but did not receive any wage from his father.
The theory of plaintiffs’ contention is that since Joseph usually finished his work for Matthews by noon of each day, his “daily rate of pay” was $5 for one-half day, which would be $10 for a full day’s work. The most apparent objection to this contention is that Joseph usually worked 5 hours each morning, which would mean that a full day of such work would be 10 hours, a working time longer than the normal 8 hour day. Under the cases quoted above, the test is loss of earning capacity and we think it unreasonable to assume that Joseph could and would have obtained employment working 10 hours a day. We are in accord with the general statement found in 99 C.J.S. Workmen’s Compensation § 295, page 1027 that insofar as daily wages are concerned, there is no precise formula that can be applied to determine the amount of loss of earning power with exactness. It is *646 a question involving the exercise of sound judgment and common sense under all of the facts and circumstances of the particular case involved. See also Malone’s Louisiana Workmen’s Compensation Law and Practice, page 439, Sec. 323. Under the peculiar facts of this case, we conclude that Joseph’s earning capacity was not more than $5 per day. The actual daily earnings at the time of the accident, though not conclusive, must be considered as a strong factor in reaching the daily earning capacity. Considering the possibility of Joseph having to work beyond noon without additional pay and all the other facts and circumstances of this particular case, we are of the opinion that Joseph’s lost earning capacity is not shown to be more than $5 per day and $30 per week.
The next issue is the computation of death benefits due plaintiffs as partial dependents. LSA-R.S. 23:1231 provides in pertinent part as follows:
“If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.”
Applying this formula to the facts of the instant case, we find that, based on a weekly wage of $30, the maximum amount which plaintiffs could recover, if wholly dependent, would be 65% thereof, that is, $19.50 per week. However, plaintiffs are only partial dependents and the only amount which was actually proved to have been contributed to them, during the year previous to the death of the employee, was the said sum of $7.50. Using the above formula, the result would be a compensation rate of only a few cents per week, but the jurisprudence is now well established that in such a situation the minimum rate of $10 per week under LSA-R.S. 23:1202, shall be allowed. Dudley v. Martin, La.App., 4 So. 2d 102; Powell v. Paramount Richards Theatres, Inc., La.App., 22 So.2d 859; Lunkin v. Triangle Farms, Inc., La.App., 24 So.2d 213.
Defendants contend that, even under these authorities, the minimum of $10 per week should be awarded to the parents jointly rather than an award of the statutory minimum to each parent, subject, of course, to the maximum of $19.50. This contention is answered in the case of Flanagan v. A. L. & W. Moore Trucking Contractors, 100 So.2d 289 (2d Cir.App.1958; writ of certiorari denied) in which it was definitely held that the statutory minimum must be awarded to each partial dependent until the maximum is exhausted. Defendants argue that. the Flanagan case is in error and that the question has never been passed on by our Supreme Court, but, as we understand the Flanagan case, it presented the issue squarely and the denial of writ of certiorari by our Supreme Court would certainly indicate their approval thereof.
The jurisprudence is apparently settled that where there are several dependents, some belonging to a class preferred over the others, such as parents over brothers and sisters, the amount due each will be paid until the maximum is exhausted and payment to those of a preferred class does not foreclose payment also to those of a deferred class, as long as part of the maximum remains. Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177; Patin v. T. L. James & Co., Inc., 218 La. 949, 51 So.2d 586; McDonald v. La. Ark. & Tex. Transportation Co., La.App., 28 So.2d 502, and Hamilton v. Consolidated Underwriters, La.App., 21 So.2d 432. Under this jurisprudence, it is clear that the maximum rate allowed by LSA-R.S. 23:1202 cannot be exceeded. Applying these rules to the instant case, it is our opinion that *647 each of the parents is entitled to the statutory minimum of $10, subject to the maximum of $19.50, which would result in a compensation rate of $9.75 per week to each parent. Since the maximum has been absorbed by the parents, who are in a preferred class, there is no amount remaining for the brothers and sisters. LSA-R.S. 23:1232.
The next issue is as regards penalties and attorney’s fees. The lower court awarded penalties plus $1500 as attorney’s fees on the grounds that “ * * * the refusal to pay, and particularly the refusal to pay funeral expenses, was arbitrary * * * ” As ;s shown by the above ré-sumé of the evidence, there was a serious factual issue as to whether plaintiffs were actually legal dependents of the decedent. The testimony was contradictory on this issue. Consequently, it cannot be said that defendants were arbitrary in failing and refusing to pay weekly compensation benefits.
However, we think defendants were arbitrary in failing and refusing to pay funeral expenses of $600 as provided by LSA-R.S. 23:1210. Claimant’s right to claim funeral expenses is not contingent upon his success in proving that he was a dependent. Jackson v. Swift & Co., Ltd., La.App., 151 So. 816; Heinzelman v. Board of Commissioners of Port of New Orleans, 149 La. 215, 88 So. 798. However, he must show either that he paid the cost of burial, or at least that he is a person legally chargeable with such costs. Rupp v. Reimann Mfg. Co., Ltd., 7 La.App. 634, Books v. Keen & Woolf Oil Co., 9 La.App. 288, 120 So. 99; Williams v. O. K. Construction Co., Inc., La.App., 151 So. 784. The sole evidence presented in connection with such expenses was a copy of a statement directed to Mrs. Electa C. Venable for funeral expense of C. A. Venable in the sum of $1142.-50 and a stipulation entered into at the beginning of the trial that said funeral bill “ * * * is a correct funeral bill representing the burial expenses for the decedent.” Plaintiffs admit there is no evidence that the funeral bill was paid, but contend that Mr. Venable is legally obligated for such costs of burial of his minor son, living with him at the time of death.
LSA-C.C. Art. 227 provides that fathers have the “ * * * obligation of supporting, maintaining, and educating their children.” We find no Louisiana case dealing with funeral expenses, but we think it is clear, under the above quoted codal provision, that a father has the duty to pay the funeral expenses of his minor child, living with him, and is liable in a reasonable amount to a third person furnishing such services. See 67 C.J.S. Parent and Child § 22, page 727 for a general statement of the law to this effect. Actually, as we understand defendants’ brief, they do not contend that the father is not obligated by law to pay funeral expenses, but contend rather that the evidence does not show the father in this case has contractually obligated himself. We think the statutory obligation suffices and it is not necessary to show that the father actually contracted for the funeral expenses in order to be held liable therefor. Therefore, the factual situation presented is that demand was made, both by letter before suit was filed and by specific demand in plaintiff’s petition, for funeral expenses in the sum of $600. Defendants failed to pay these expenses and in their answer denied liability therefor, without any reasonable legal defense. It is clear, under the circumstances, that defendants acted in an arbitrary manner in failing and refusing to pay funeral expenses which were undoubtedly due. See Darby v. Johnson, La.App., 118 So.2d 707 and the cases cited therein. Penalties of 12% must be paid only on the amount of $600 which defendants arbitrarily failed and refused to pay. As to the amount of $1500 for attorney’s fees, we think that in view of the relatively small sum of $600 involved and the fact that funeral expense was not the principal issue litigated, an award of $300 would be proper *648 and in keeping with the jurisprudence. See Darby v. Johnson, supra, and Shuff v. Liberty Mutual Ins. Co., La.App., 134 So.2d 707,
The final issue in this litigation is whether the trial judge was correct in dismissing with prejudice plaintiffs’ suit against Dugas and Thibodeaux as well as the third party demand filed by Matthews and Liberty Mutual against Thibodeaux and Dugas for indemnity under LSA-R.S. 23:1061. After trial on the merits, Thibodeaux and Dugas filed an exception of “No Right or Cause of Action” on the grounds that they had been cited and served as individuals but that actually they were conducting their business as a partnership and that under the law (LSA-C.C.P. Art. 737) partners cannot be sued on a partnership obligation unless the partnership is joined as a defendant. Since the record reveals that the partnership was not joined as a party defendant, the trial court dismissed with prejudice both plaintiffs’ suit and said third party demand against Thibodeaux and Du-gas individually. On appeal, Matthews and Liberty Mutual contend: (1) Dugas and Thibodeaux were operating as joint ventur-ers and not as a partnership at the time of the accident. (2) If this court should find otherwise, this defense was waived by failure to plead it timely. (3) In the alternative, the district court’s judgment should have established a time limit for the amendment of appellants’ pleadings so as to name the partnership as a third party defendant. (4) Further, in the alternative, any dismissal of appellants’ third party action because of the partnership aspect of the case should have been ordered as of nonsuit.
The relevant facts are that Matthews, a company engaged in the business of selling livestock feed, shipped a boxcar load of feed to Carenero, Louisiana, on Tuesday of each week. Accompanying each shipment were orders specifying the names of the customers and the amounts of feed to be delivered to each. Matthews entered into an agreement with Dugas, owner of the truck, to deliver the feed each week for $15 per boxcar, plus 12‡ for each sack of feed delivered. Dugas was to pay all of his operating expenses and was subject to no control by Matthews as to the manner in which he performed this work, except that he make the deliveries within a reasonable time. Dugas in turn entered into an arrangement with Thibodeaux, his stepson, to unload the boxcar, drive the truck and deliver the feed, it being agreed that they would pay all expenses for gas, oil, labor, etc. and then, split the profits, if any. Thibodeaux in turn, with the approval of Dugas, employed Joseph Venable, the deceased minor, to assist in unloading the car and delivering the feed. Payment was made by Matthews to Dugas by check without any deductions for Federal Income Tax or Social Security. Dugas apparently cashed these checks, paid all expenses, including labor, in cash, and then divided the profits, if any, with Thibodeaux.
Under these facts, it might be stated at the outset that Joseph Venable was clearly the direct employee of Dugas and Thibodeaux, who were independent contractors performing the work of Matthews, the principal contractor, within the meaning of LSA-R.S. 23:1061. The next question is whether Dugas and Thibodeaux were conducting these hauling operations as a partnership, such that the obligation to pay Joseph’s wages and workmen’s compensation benefits was a partnership obligation, making it necessary that the partnership be joined as a party defendant. Matthews contends that this arrangement was a joint venture, rather than a partnership, primarily because it was a business venture having a single and limited purpose under an extremely informal arrangement without even a firm name. Even if the agreement was a joint venture, there is a serious question as to whether it, like a partnership, must be a party defendant, but we do not find it necessary to answer this question because we have concluded it was a partnership. As *649 is pointed out in the article entitled “The Business Joint Venture in Louisiana”, 25 Tulane Law Review 382, it is often very difficult to distinguish between a joint venture and a partnership. One of the distinctions mentioned is that a joint venture relates to a single transaction, whereas a partnership relates to a general business of a particular kind. Even admitting, for the sake of argument, the validity of this distinction, the facts of the instant case show that Dugas and Thibodeaux did not enter into their agreement for a single transaction, but instead contracted to conduct this business of unloading and hauling feed over a considerable period of time. In our opinion, this arrangement included all of the necessary elements of a commercial partnership under Louisiana law. It had its origin in a contract by which the parties agreed to share profits, if any, from the pooling of their common property and skill in a particular business endeavor. LSA-C.C. Art. 2801 et seq.; “Essential Elements of Louisiana Partnership” 10 Tulane Law Review 307; Trappey v. Lumbermen’s Mutual Casualty Co., La.App., 77 So.2d 183.
Having concluded that Dugas and Thibo-deaux were operating as a partnership, we find applicable the provisions of LSA-C. C.P. Art. 737 which provides in pertinent part that “ * * * the partners of an existing partnership may not be sued on a partnership obligation unless the partnership is joined as a defendant.” The Official Revision Comment under LSA-C.C.P. Art. 737 states that this article is simply declaratory of the rule long established by our jurisprudence. See the cases cited there and Kline v. Dawson, 230 La. 901, 89 So.2d 385.
 However, appellants contend that the objection raised through this exception is dilatory in nature, since it involves lack of procedural capacity of Dugas and Thibodeaux to stand in judgment as individuals, and that such a dilatory exception is waived unless pleaded prior to answer. LSA-C.C.P. Art. 926 and Art. 928. We cannot agree with this contention. It is our opinion that the exception was peremptory in nature since it involved the nonjoinder of an indispensable party under thé provisions of LSA-C.C.P. Art. 927. It is clear, under the provisions of LSA-C. C.P. Art. 737, that the individual partners cannot be sued on a partnership obligation, unless the partnership is joined as a party defendant. The partnership is therefore an indispensable party. Under LSA-C.C.P. Art. 928 the peremptory exception may be pleaded at any stage of the proceedings prior to submission of the case for a decision. We therefore conclude that the exception was peremptory, rather than dilatory, and was timely filed.
Turning now to appellants’ alternative argument, that the district court should have entered judgment allowing an amendment, so as to name the partnership as a party defendant, we find that LSA-C.C.P. Art. 934 provides as follows:
“Effect of sustaining peremptory exception
“When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.”
In the instant case, we think it is apparent that the grounds of objection could have been removed by amendment so as to name the partnership as a party defendant and that the judgment sustaining the exception should have so provided. However, in order to avoid further delay to the plaintiffs and at the same time reserve all of the rights of Matthews and Liberty Mutual in their said third party demand against Dugas and Thibodeaux, we have decided to follow appellants’ alternative re *650 quest that said third party action be dismissed as of nonsuit, rather than with prejudice.
For the reasons assigned, the judgment appealed is amended so as to provide weekly compensation payments in the sum of $9.75 each (instead of $10 each) to Eddie Venable and Electa Cormier Venable, beginning September 26, 1960, for a total of 400 weeks. That portion of the judgment in favor of Eddie Venable, as administrator of his minor children, for the sum of $15 per week, is reversed and set aside. That portion of the judgment relating to penalties and attorney’s fees is amended so as to provide for judgment in favor of Eddie Venable for the sum of $300 as attorney’s fees, plus a penalty of 12% additional on the award of $600 for funeral expenses. Interest is awarded on the attorney’s fees and funeral expenses, from January 20, 1961, and on all weekly compensation benefits awarded herein from the due date of each payment until paid. That portion of the judgment dismissing the third party demand of George B. Matthews, Inc. and Liberty Mutual Insurance Company against Linus Thibodeaux and Ovey Dugas, with prejudice, is reversed and set aside and said third party demand is dismissed as of nonsuit. Otherwise than as herein amended or reversed, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Reversed in Part, Amended in Part, and Affirmed in Part.
TATE, J., also concurs with written reasons.

. In Jarrell v. Travelers Insurance Co., 218 La. 531, 50 So.2d 22, the rate of pay was $3 a day, but the number of hours per day is not disclosed. In Evans v. La. State Board of Education, 85 So.2d 669 (1st Cir.App.1956) a part-time manual arts teacher was paid $3 an hour, worked three hours on each of two evenings per week and the court held the daily wage was $9 and the weekly wage $54, of which 65% was more than the then maximum rate of $30 per week. Therefore the court did not actually have to consider the problem presented in the instant case.

. Hoffman v. City of New Orleans, 240 La. 943, 125 So.2d 774 indicates the only possible exception to the six-day week is where the work was limited by statute to a lessor period, as in Barr v. United Gas Public Service Co., 183 La. 873, 165 So. 129, but the Supreme Court expresses doubt that it will even follow the Barr case exception in the future.